## FEDERAL TRADE COMMISSION v. BALME.

Circuit Court of Appeals, Second Circuit.
January 9, 1928.

No. 86.

1. Courts ⊙⇒405(3)—Circuit Court of Appeals is appellate court, reviewing District Court's decisions (26 Stat. 826).

Under Act March 3, 1891 (26 Stat. 826), the Circuit Court of Appeals is an appellate court, reviewing decisions of the District Court.

2. Trade-marks and trade-names and unfair competition ⊙⇒80½—Jurisdiction of Circuit Court of Appeals, under Federal Trade Commission Act, does not depend on rank of court, but on terms of statute (15 USCA § 41 et seq.).

The Federal Trade Commission Act (15 USCA § 41 et seq.) confers special statutory jurisdiction on Circuit Court of Appeals, and the extent of such jurisdiction and the conditions of its exercise over subjects or persons necessarily depends on terms in which jurisdiction is thus conferred, and not on rank of court on which it is conferred.

3. Trade-marks and trade-names and unfair competition ⊙⇒80½—Jurisdiction of Circuit Court of Appeals under Federal Trade Commission Act must be strictly pursued (15 USCA § 41 et seq.).

Jurisdiction granted to Circuit Court of Appeals by Federal Trade Commission Act (15 USCA § 41 et seq.) must be strictly pursued.

4. Trade-marks and trade-names and unfair competition ⊙⇒80½—Decree affirming, modifying, or setting aside Federal Trade Commission's order depends on proof of violation of law, not on violation of Commission's order (Federal Trade Commission Act, § 5 [15 USCA § 45]).

Decree of Circuit Court of Appeals, affirming, modifying, or setting aside order of the Federal Trade Commission directing respondent to desist from practices constituting unfair competition, in violation of Federal Trade Commission Act, § 5 (15 USCA § 45), is not dependent on proof of the violation of the Commission's order, but on proof of a violation of the law, and court must therefore first examine proceeding before Commission, and determine whether there has been a violation of the law, before determining disputed questions of fact as to violation of the order.

5. Trade-marks and trade-names and unfair competition ⊙⇒80½—Power of Circuit Court of Appeals to modify Federal Trade Commission's order includes power to conform order in point of law to pleadings and findings (Federal Trade Commission Act, § 5 [15 USCA § 45]).

Power of Circuit Court of Appeals to modify an order of the Federal Trade Commission, under Federal Trade Commission Act, § 5 (15 USCA § 45), includes the power to confirm an order in point of law to the pleadings and findings, and even where court remands, with instructions to modify in accordance with its opinion, the decree continues to be that of the court.

6. Trade-marks and trade-names and unfair competition ⊚➡80½—Circuit Court of Appeals may correct law error in Federal Trade Commission's order, its jurisdiction being original, and Commission being purely fact-finding body (Federal Trade Commission Act, § 5 [15 USCA § 45]).

Jurisdiction of the Circuit Court of Appeals to review an order of the Federal Trade Commission, under Federal Trade Commission Act, § 5 (15 USCA § 45), is original, and where the fault in Commission's order is in point of law, court may correct it, but in doing so it recognizes the Commission is purely a fact-finding body.

7. Trade-marks and trade-names and unfair competition ⊚➡80½—It is for courts, not for Federal Trade Commission, to determine meaning of "unfair method of competition," within statute (Federal Trade Commission Act, § 5 [15 USCA § 45]).

It is for the courts, not for the Federal Trade Commission, to determine as matter of law the meaning of the words "unfair method of competition," as used in Federal Trade Commission Act, so as to authorize enforcement of order to cease such practice under section 5 of the act (15 USCA § 45).

8. Trade-marks and trade-names and unfair competition ⊚➡80½—Federal Trade Commission is an administrative body.

The Federal Trade Commission is an administrative body.

9. Trade-marks and trade-names and unfair competition ⊚➡80½—Federal Trade Commission's finding of fact respecting unfair competition, supported by evidence, is binding on courts (Federal Trade Commission Act, § 5 [15 USCA § 45]).

Finding of fact of the Federal Trade Commission that there has been a violation of law, justifying an order to cease and desist from unfair methods of competition, in violation of Federal Trade Commission Act, § 5 (15 USCA § 45), having evidence to support it, is conclusive and binding on the courts.

10. Trade-marks and trade-names and unfair competition ⊚➡70(1, 2)—Purchasing public should be protected from deception, resulting in their securing article which they did not intend to purchase, or where article is misbranded (Federal Trade Commission Act, § 5 [15 USCA § 45]).

The purchasing public should be protected from deception by an order of the Federal Trade Commission to cease and desist from unfair methods of competition, in violation of Federal Trade Commission Act, § 5 (15 USCA § 45), if that deception results in their securing an article or product which they did not intend to purchase, as well as where an article is misbranded.

11. Trade-marks and trade-names and unfair competition ⊚➡70(4)—Test of "unfair competition" is whether natural and probable use of deceptive label causes ordinary purchaser to purchase that which he did not intend to buy (Federal Trade Commission Act, § 5 [15 USCA § 45]).

Test of "unfair competition," authorizing order to desist, under Federal Trade Commission Act, § 5 (15 USCA § 45), is whether the natural and probable result of the use of a label which is deceptive to ordinary purchaser makes him unwittingly, under ordinary conditions, purchase that which he did not intend to buy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

12. Trade-marks and trade-names and unfair competition ⊚➡75—"Unfair competition" depends on whether there is actual confusion, caused by simulation of one person's goods for another's, actual or attempted deception or damages not being necessary (Federal Trade Commission Act, § 5 [15 USCA § 45]).

A deliberate effort to deceive is not a necessary element in unfair competition, to support an order of Federal Trade Commission to cease and desist from such practice, under Federal Trade Commission Act, § 5 (15 USCA § 45); nor is it necessary, to support such order, to find actual deception, or that any competitor of respondent has been damaged, but inquiry is whether there is actual confusion, brought about by simulation of one person's goods for those of another.

13. Trade-marks and trade-names and unfair competition ⊚➡70(3)—Use of artificial name in merchandising manufacturer's product, though not registered as trade-mark, will be protected.

When an artificial name has been adopted by a manufacturer, and he makes use of it in merchandising his product, such coined word is his sole property, and a deliberate use of such name, although no attempt has been made to register it as a trade-mark, subjects the trespassing competitor to restraint in its use.

14. Trade-marks and trade-names and unfair competition ⊚➡68(1)—False and misleading advertising constitutes "unfair competition," with which Federal Trade Commission may deal (Federal Trade Commission Act, § 5 [15 USCA § 45]).

False and misleading advertising is a dishonest practice, and amounts to unfair competition, of public interest, with which the Federal Trade Commission may deal, under Federal Trade Commission Act, § 5 (15 USCA § 45).

15. Trade-marks and trade-names and unfair competition ⊚➡80½—Federal Trade Commission's petition, and supporting evidence, held sufficient to require respondent to answer charge of marketing hair dye in packages deceptively similar to competitor's process (Federal Trade Commission Act, § 5 [15 USCA § 45]).

Petition by Federal Trade Commission for the enforcement of an order directing respondent to cease and desist from unfair methods of competition, in violation of Federal Trade Commission Act, § 5 (15 USCA § 45), and evidence supporting petition, showing that respondent was marketing his hair dye in packages which so closely resembled in size, shape, color, and printed matter the packages of a competitor as to deceive purchasing public under ordinary conditions, *held* sufficient to require respondent to answer the charge, in view of the previous confusion, claim of which was apparently ac-

quiesced in by respondent's complying with portion of order to cease and desist.

**16. Trade-marks and trade-names and unfair competition ⊙⟶80½—Affidavits supporting Federal Trade Commission's petition for enforcement of order to cease unfair competition cannot be considered, and will be stricken from record (Federal Trade Commission Act, § 5 [15 USCA § 45]).**

Affidavits submitted to support petition by Federal Trade Commission for enforcement of an order directing respondent to cease and desist from certain practices found by the Commission to constitute unfair competition, in violation of Federal Trade Commission Act, § 5 (15 USCA § 45), will be stricken from the record, since Circuit Court of Appeals is not authorized to consider them under the statute.

Petition to Enforce Order of the Federal Trade Commission.

Petition by the Federal Trade Commission for the enforcement of an order entered against Paul Balme, trading under the name and style of B. Paul, which order directed him to cease and desist from certain practices found by the Commission to constitute unfair methods of competition, in violation of section 5 of the Federal Trade Commission Act (15 USCA § 45). Order affirmed, and question of present violation referred to Commission, with directions.

Bayard T. Hainer, Chief Counsel, Federal Trade Commission, Adrien F. Busick, Asst. Chief Counsel, G. Edwin Rowland and James W. Nichol, all of Washington, D. C., for petitioner.

Munn, Anderson & Munn, of New York City (T. Hart Anderson and Charles A. Morton, both of New York City, of counsel), for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The Federal Trade Commission issued an order against the respondent, directing him to cease and desist from certain practices found by it to constitute methods of unfair competition, in violation of section 5 of the act (38 Stat. 717). The order directed the respondent to cease and desist (1) from using the coined word "Oréal," either standing alone or in connection with any prefix thereto, as a trade-name or descriptive name for a henna hair dye, when sold and distributed in interstate commerce; (2) from using the same word upon the containers in which the hair dye is sold or distributed in interstate commerce; (3) from using the coined word in advertising, either circular, newspaper, or magazine; (4) from using on the container

in which the henna hair dye is sold or distributed in interstate commerce the French words "la plante merveilleuse," or on any labels or circular or newspaper or magazine advertising henna hair dye in such a way as to confuse respondent's product with any competing product; (5) "from putting up the henna hair dye, sold and distributed in interstate commerce, by the respondent, in any container so similar in color and general appearance of lettering or device with that of a competitor as to confuse and mislead the public into believing that the henna hair dye of the respondent is one and the same as that of its competitor"; and (6) from using, either on the label of the container in which the henna hair dye is packed or in advertising, false or descriptive words or phrases, such as "New French discovery," or "the only harmless coloring in the world," or phrase or phrases of similar import, when sold or distributed in interstate commerce.

After the order of the Commission was made, the respondent complied with its prohibitions, except as to the fifth section. It is for this refusal to comply that the Commission has petitioned this court, asking for an order of enforcement. It bases its application under section 5 of the act, which provides:

"If such person, partnership, or corporation fails or neglects to obey such order of the Commission while the same is in effect, the Commission may apply to the Circuit Court of Appeals of the United States, within any circuit where the method of competition in question was used or where such person, partnership, or corporation resides or carries on business, for the enforcement of its order, and shall certify and file with its application a transcript of the entire record in the proceeding, including all the testimony taken and the report and order of the Commission. Upon such filing of the application and transcript the court shall cause notice thereof to be served upon such person, partnership, or corporation and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript a decree affirming, modifying, or setting aside the order of the Commission. The findings of the Commission as to facts, if supported by testimony, shall be conclusive." 15 USCA § 45.

The same section gives the right of review to a respondent affected by an order to cease and desist, who seeks a modification or reversal or a setting aside of the order.

The statute, in addition to conferring jurisdiction upon the Circuit Court of Appeals to enforce, set aside, and modify orders of the Commission, makes such jurisdiction exclusive, and requires precedence over other cases pending, so that causes may be expedited.

[1-4] The Circuit Court of Appeals is an appellate court, reviewing decisions of the District Court. U. S. v. Mayer, 235 U. S. 55, 35 S. Ct. 16, 59 L. Ed. 129; 26 Stat. 826. The Federal Trade Commission Act confers special statutory jurisdiction, and the extent of such jurisdiction and the conditions of its exercise over subjects or persons must necessarily depend upon the terms in which the jurisdiction is thus conferred. It does not depend upon the rank of the court upon which it is conferred. It must be strictly pursued, because the court does possess jurisdiction over other subjects or persons more extended and general. Galpin v. Page, 18 Wall. (85 U. S.) 350, 21 L. Ed. 959; Chamber of Commerce of Minneapolis v. Federal Trade Commission (C. C. A.) 280 F. 45. The exercise of such power conferred is to make and enter, upon the pleadings, testimony, and proceedings set forth in the transcript of record, a decree affirming, modifying, or setting aside the order of the Commission, and is not dependent upon proof of the violation of the Commission's order, but upon proof of a violation of the law. The statute grants jurisdiction of the proceeding and of the question determined therein. The proceeding comprises (a) the complaint of the Commission; (b) the testimony taken; (c) the report by the Commission, in which shall be stated the findings as to the facts; and (d) the order to cease and desist. It thus will be seen that the proceeding does not contain any evidence with respect to a violation by the respondent of the Commission's order, but only with respect to respondent's original violation of the law; that is, as it engaged in the use of unfair methods of competition in interstate commerce. Therefore the primary question presented to us is whether the Commission's determination on this point was correctly reached. It is not conceivable that the court would take jurisdiction of the proceeding on the Commission's petition for the enforcement of the order, without first holding that the Commission's order was valid and enforceable. It would not dismiss the petition for want of proof of a violation thereof until it had first found a valid order to be violated. The act provides that "the court

shall have the same jurisdiction to affirm, set aside or modify the order of the Commission as in the case of an application by the Commission for the enforcement of its order."

Manifestly, it is very apparent that the question of violation of the Commission's order would not be involved until a valid order was recognized by this court after having acquired jurisdiction. Therefore we must first examine the proceeding before the Commission and determine whether there has been a violation of the law. Until then, no good purpose can be served for determining disputed questions of fact as to a violation of the order. The statute does not impose any penalty for violation of the Commission's order, and the order is not binding until vitalized by the power of this court to punish for contempt, when the court shall have entered a decree affirming the order and commanding permanent obedience thereto, and it is not until the Commission presents a case of justifying the charge of violation that action will be taken to punish. It is then, and not until then, that the question of fact as to violation of order becomes a proper issue to be determined by the court.

The filing of an answer, or the receipt of affidavits disputing the alleged violation of the order, is of no importance until the order to cease and desist has received confirmation by the Circuit Court of Appeals. When confirmed, the order then entered is identical with the one entered by the Commission, unless, for good reasons, there should be a modification required. Q. R. S. Music Co. v. Federal Trade Commission (C. C. A.) 12 F.(2d) 730.

[5, 6] The power to modify the order of the Commission is given by statute, and includes the power to conform an order in point of law to the pleadings and findings. Federal Trade Commission v. Beechnut Packing Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882; L. B. Silver Co. v. Federal Trade Commission (C. C. A.) 289 F. 985; Sears, Roebuck & Co. v. Federal Trade Commission (C. C. A.) 258 F. 307, 6 A. L. R. 358. Even where the court may remand, with instructions to modify in accordance with its opinion, the decree continues to be that of the court. L. B. Silver Co. v. Federal Trade Commission (C. C. A.) 292 F. 753. But, under the act, the jurisdiction of the court is original. Butterick Co. v. Federal Trade Commission (C. C. A.) 4 F.(2d) 910. Where the fault in the Commission's

order is in point of law, the court may correct it, but in doing so it recognizes that the Commission is purely a fact-finding body. [7-9] The words "unfair method of competition" are not defined by the statute, and their exact meaning is in dispute. It is for the courts, not the Commission, to determine as a matter of law what they include. Federal Trade Commission v. Gratz, 253 U. S. 421, 40 S. Ct. 572, 64 L. Ed. 993. The Commission is an administrative body. Federal Trade Commission v. Eastman Kodak Co., 47 S. Ct. 688, 71 L. Ed. ——, decided May 31, 1927. Therefore our first inquiry is to determine whether, on the facts found, as supported by the evidence, there has been a violation of the law, and the finding of fact by the Commission, having evidence to support it, is conclusive and binding upon the courts. Federal Trade Commission v. Curtis Publishing Co., 260 U. S. 568, 43 S. Ct. 210, 67 L. Ed. 408; Harriet Hubbard Ayer v. Federal Trade Commission (C. C. A.) 15 F.(2d) 274.

L'Oréal Henné is a mark or name of a hair dye originally imported from France, but later manufactured in this country, and it is claimed that the respondent simulated the dress of this product and name as prepared for the market. It was manufactured and sold in France in 1900 by a concern known as the Société Française de Taintures Inoffensives pour Cheveux, which in English means the French Company of Inoffensive Hair Dyes. Pulverized henna is its basic ingredient. It is obtained from an Asiatic thorny tree or shrub, and its leaves are reddish orange in color. Henné is the French for the English henna. L'Oréal Henné was imported, packed in blue tin boxes, 3⅛ inches in height and 2¼ inches in width, and when subsequently manufactured in this country it was packed in blue pasteboard boxes of approximately the same size. The Commission placed importance upon the simulation of the package as practiced by the respondent, as well as a similarity in dress between the containers in which a competitor sold L'Oréal Henné, and the respondent his product D'Oréal Henna.

There is testimony that, when first imported, there were no henna hair dyes on sale in this country. A competitor of respondent, one Lebeau, commenced this importation, and continued until nearly 1918, first shipping in the small blue tin cans, and later importing it in bulk and reducing it to packages of from 10 to 15 pounds, and also into individual cans and cardboard boxes, which were manufactured here. The prod-

uct was advertised extensively, and his importations increased steadily, but not in large volume. He sold to wholesalers and in interstate commerce. On January 2, 1918, he procured a contract to sell this product for a period of 10 years. By it he was granted the right to manufacture L'Oréal Henné, and obtained the right to use the trade-mark L'Oréal and all the formulæ, processes, and secrets for the manufacture of the product in the United States, Canada, and Mexico. He made his product in this country under the formulæ as employed in the imported goods. The labels used were "exactly the same."

After the respondent entered the business, he closely simulated the name and dress of Lebeau's product of L'Oréal Henné, which resulted in confusion among the trade and the buying public. Henna D'Oréal was placed upon the market in June, 1915. He traded under the name of B. Paul, following a practice, said to be common in this trade, of using the given name in place of the surname. There is testimony that the formulæ of respondent's product is the same as the formulæ of L'Oréal Henné. It was placed in wooden boxes, with dark blue labels and white markings. Later it was sold in tin boxes with the same color scheme, the containers being one-sixteenth of an inch higher and one-eighth of an inch more in width than L'Oréal Henné. Respondent advertised extensively, and his business grew, and much of his product was sold in interstate commerce. The charge of the Commission's complaint is that the respondent was marketing his product in packages which so closely resembled, in size, shape, color, and printed matter thereon, the general appearance of the packages of L'Oréal Henné, that the similarity was calculated to and did deceive the purchasing public under the ordinary conditions which prevail in the usual course of retail trade, and that purchasers were induced by such similarity of the packages to buy respondent's product upon the mistaken belief that it was L'Oréal Henné.

The Commission has made a finding of fact which supports this charge of the complaint. There is evidence to support the finding as to the shape, size, color, and printed matter on the packages. The containers were about the same in material and size. The respondent adopted the same color scheme. His explanations as to why he did so were found unsatisfactory to the Commission. He explained his change of lettering. But a comparison of the respective containers, with such change, shows the colors of the

letters were exactly the same, and when considered with the size and style of the lettering, and the names of the two preparations, the most conspicuous words on the face of each case are almost identical. Both are shaded in white and the resemblance is most striking. They both use the words, "La plante, merveilleuse," which in English means "the marvelous plant," and the French words, "Recoloration Naturelle Des Cheveux," which in English means natural recoloration of hair. Respondent's Henna D'Oréal combined the words and in English reads, "Nature's Hair Restorer"; then follows the name of the manufacturer and the place of manufacture. But the words are in the same relative position upon the can.

The Commission found he carried on the deception by adding the French phrase, "La plante merveilleuse," which was not translated into English. It said that the French phrase was in the exact relative position on respondent's can as it was on the L'Oréal Henné can, and that this was done designedly. On the top of the can of L'Oréal Henné is a picture of a woman's head and flowing hair, although dissimilar in appearance, the phrase Henna D'Oréal over it, and the English words, "Nature's Hair Regenerator," under it. The wording on the top of respondent's can is white, with a dark blue background, a simulation as to color of the lettering on the top of the L'Oréal Henné can. Upon each can, pasted around the top for the purpose of sealing it, is a band of paper with printed matter thereon. On the L'Oréal Henné can the trade-name is used, and under it the words "Dark Chestnut," with the French equivalent, "Chatain Fonce." Turning the can, are found the words, "La plante merveilleuse," and the words, "Bande de sureté." Respondent has printed the words "Henna D'Oréal and "Light Auburn," and on turning the can the words "La plante merveilleuse" and "Guarantee Seal," the latter being the English equivalent of the French "Bande de sureté."

It thus appears that the respondent has copied the color of the can, the arrangement of the words on the face thereof, the woman's head on the top, the paper band around the can, and placed them in the same position as the L'Oréal can, and has adopted the English of the French words used in the manufacture of L'Oréal Henné. There is a finding that it was difficult to tell the difference, and that there was confusion among the purchasing public. The unsatisfactory explanation given by the respondent of the choice

of his trade-name, considered with his previous experience in connection with his brother's business, and the suggestion then of using the name respondent now uses, to which his brother objected, was a clear indication of a design and intent to use the name Henna D'Oréal, with a view of capturing the trade flowing from the advertising and marketing of L'Oréal Henné.

Witnesses called before the Commission supported the finding that there was in fact confusion. It also appears that respondent's advertising is misleading and false in character. Such advertising referred to a "new French discovery," "the only harmless coloring in the world," "trade-mark registered," when in fact it was not, and "copyrighted in 1918," when in fact it was not.

[10, 11] There is here presented the question of whether the public interest is concerned which would warrant the Federal Trade Commission prohibiting this respondent from competing in trade in this unfair manner, which strikingly affects his competitors. Is it of sufficient public interest to warrant the Federal Trade Commission in issuing its cease and desist order? The purchasing public should be protected from deception, if that deception results in their securing an article or product which they did not intend to purchase, as well as where an article is misbranded. Federal Trade Commission v. Winsted Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729; Royal Baking Powder Co. v. Federal Trade Commission (C. C. A.) 281 F. 744. The test of unfair competition is whether the natural and probable result of the use by a respondent of a label which is deceptive to the ordinary purchaser makes him unwittingly, under ordinary conditions, purchase that which he did not intend to buy. Notaseme Hosiery Co. v. Straus (C. C. A.) 201 F. 99.

We said in Caron Corporation v. Vivaudou, Inc., 4 F.(2d) 995: "While the plaintiff has no right to a monopoly in the use of the word, the color, or the ornament, simpliciter, when it becomes an element in a manifold likely to divert from him his customers, the law will prevent its use."

There we pointed out that color may be effective as a means of fraud, when used as an element in a dress otherwise shown to be fraudulent. And in Florence Manufacturing Co. v. J. C. Dowd & Co., 178 F. 73, we said: "The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in

making purchases, do not stop to analyze, but are governed by appearances and general impressions."

Nims on the Law of Unfair Competition and Trade-Marks (2d Ed.) § 117, says: "The question is, not whether two articles are readily distinguishable when set side by side, but whether the general impression made by defendant's article upon the eye of a casual purchaser, who is unsuspicious and off his guard, is such as to be likely to result in his confounding it with the original article."

[12] The inquiry is whether there is actual confusion, which is brought about by the simulation of one person's goods for those of another. A deliberate effort to deceive is not a necessary element in unfair competition. Thum Co. v. Dickinson (C. C. A.) 245 F. 609; Trappey v. McIlhenny Co. (C. C. A.) 281 F. 23. Nor is it necessary, to support the order below, to find actual deception, or that any competitor of the respondent has been damaged. Charles Broadway ·Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706; Rice & Hutchins, Inc., v. Vera Shoe Co., Inc. (C. C. A.) 290 F. 124; Sears Roebuck & Co. v. Federal Trade Commission (C. C. A.) 258 F. 307, 6 A. L. R. 358.

[13, 14] L'Oréal is not a descriptive name of the product. When an artificial name has been adopted by a manufacturer, and he makes use of it in merchandising his product, such coined word is his sole property (Nims, The Law of Unfair Competition and Trade-Marks [2d Ed.] § 52), and a deliberate use of such name, although no attempt has been made to register it as a trade-mark, subjects the trespassing competitor to restraint in its use. (G. & C. Merriam Co. v. Saalfield [C. C. A.] 198 F. 369; Hygeia Distilled Water Co. v. Consolidated Ice Co. [C. C. A.] 151 F. 10; Nims, The Law of Unfair Competition and Trade-Marks [2d Ed.] § 53). False and misleading advertising is a dishonest practice, and amounts to unfair competition, of public interest, with which the Federal Trade Commission may deal. Royal Baking Powder Co. v. Federal Trade Commission, supra.

The respondent argues that section 5 of the Federal Trade Commission Act is unconstitutional (a) because it fails to define any standard of conduct for the guidance of the Commission; (b) because it is penal, and fails to define elements of the offense; and (c) because it authorizes an administrative body to legislate judicially, operative ex post facto. Section 5 has so often been considered and held to be constitutional by the courts that it is not necessary now to consider these objections to its constitutionality.

[15] It is conceded by the Federal Trade Commission that sections, 1, 2, 3, 4, and 6 of the order have been complied with, but it is charged that the respondent is now violating section 5. The respondent is now selling its product in a can of the same size, with a blue background and labeled "B. Paul's Henna," with a strip of paper as a sealing band, and with the picture of a woman with flowing hair on the top. It is similar in color and general appearance to the lettering on the container used in marketing L'Oréal Henné. The reading matter differs, but the Commission says that it is a device used to confuse and mislead the public into believing that the henna hair dye .of the respondent is one and the same as that of its competitor. The petition submitted on this application for enforcement points out the similarity of dress of the goods as to color, shape, and size. The shape and size of the can are the same as those used and associated with the name L'Oréal Henné. It sets forth confusion among purchasers and among the sales force of establishments using the product.

[16] In view of the previous confusion, the claim of which seems to have been acquiesced in by the respondent's conduct in complying with the order to cease and desist, and the charge made in the present petition, we think there is sufficient substance therein to require the respondent to answer the charge, which he will do within 10 days from the date of the⬧ entry of the mandate herein, after which the Federal Trade Commission will take proof for and against the charge made in the present petition, and report to the court its findings as to the facts, and as to whether there is confusion caused to the purchasing public, constituting unfair competition in trade, in which the public has an interest. The affidavits submitted to support the petition, we hold, should be stricken from the record, because we are unauthorized to consider them under the statute.

The order of the Federal Trade Commission, adjudging the respondent guilty of unfair competition, is affirmed; the question of the present violation of section 5, for which enforcement is asked by the petition to this court, is referred to the Federal Trade Commission, with opportunity for the respondent to answer and submit proof, and with directions to the Commission to report its conclusions to this court.

Ordered accordingly.

`L. HAND, Circuit Judge (concurring). I think that we have no jurisdiction to review the Commission's order until we have decided that the respondent has disobeyed it. Section 5 of the act says that, "if such person * * * neglects to obey such order * * * the Commission may apply to the Circuit Court of Appeals." That is not to say that the Commission may so apply, if they merely allege that the respondent has disobeyed; it is the fact, not their assertion, which conditions our jurisdiction. Such, at least, is the form of the act, and such the decision of the Seventh Circuit. Fed. Trade Com. v. Standard Education Soc. (C. C. A.) 14 F.(2d) 947.

The answer is that we cannot decide that question, because section 5 confines our inquiry to the proceedings before the Commission up to the entry of its order, and that the respondent's disobedience necessarily occurred theretofore. In the first place, if the fact is a condition on our jurisdiction, we have inherent power, like any other court, to decide it, else we could not act at all. In the second, we must decide it at some time anyway, and I can perceive no greater express power to act after the order has been held valid than before. We are assuming a power in either event not conferred on us in words.

Passing the form and turning to convenience, I cannot see that it is more awkward in practice to determine disobedience before validity than validity before disobedience. It is quite true that we run the chance of wasting our time either way, for we cannot decide everything at once; but it is fairer, I think, to take up the issue of disobedience first. If the respondent has in fact obeyed the order, why should he be vexed with the suit at all? Presumably the question is of little moment to him. Only after his protestation of compliance has been shown to be untrue ought he to be called on to dispute the order. At least, so it seems to me. The order has no sanction in any case, and we are not to confuse the case with a contempt, which presupposes some coërcive power already exercised.

Therefore I think that all we should do is to enter the order of reference which we propose, and in which I concur. However, on the point of jurisdiction I am overruled, and, as in fact I agree that the order is valid, I concur also in our finding that it is, as well as in the court's opinion so holding.