SHAKESPEARE CO. v. FEDERAL TRADE COMMISSION.

No. 5719.

Circuit Court of Appeals, Sixth Circuit.

June 13, 1931.

Robert O. Brownell, of Washington, D. C. (A. R. Serven and D. R. Forbes, both of Washington, D. C., on the brief), for petitioner.

Alfred M. Craven, of Washington, D. C. (Martin A. Morrison and Robert E. Healy, both of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

The petitioner is now, and for more than thirty years has been, engaged in the manufacture and sale of fishing rods, reels, lines and other items of tackle. It sells these products through small sporting goods and hardware stores located in towns and cities in all parts of the United States and to some of the large mail order and department stores. On May 19, 1930, the Federal Trade Commission issued an order directing it to cease and desist from using certain trade methods found by the Commission to be unfair. The order is in three sections, the first of which orders the petitioner to cease and desist from entering into or procuring from its dealers contracts, agreements, understandings, promises, or assurances that its products, or any of them, are to be resold by such dealers at prices specified or fixed by it. This section of the order, as well as the other two sections, is assailed by the petitioner in this proceeding upon the ground that the findings of fact which the Commission made are not sufficient to support it and are themselves not supported by substantial evidence.

The petitioner admits that it furnishes to its customers suggested minimum resale prices, and that in several instances, where a customer has cut prices below those suggested by it, it has refused thereafter to make further sales to the customer; but it contends that it has never made any agreements with its customers, either express or implied, which undertook to obligate them to observe specified resale prices, and therefore has never adopted or engaged in any unfair trade practice within the meaning of the Federal Trade Commission Act (15 USCA §§ 41–51).

Although the evidence fails to disclose any express or formal agreement entered into by the petitioner with any of its customers, under which the customer agreed not to sell the petitioner's products below the suggested minimum prices, it is apparent from the proofs that there has been co-operation between the petitioner and its customers which was the equivalent, for practical purposes, of such formal arrangement. The record shows several instances in which the petitioner refused to fill orders except upon assurance by the customer that he would discontinue selling below the suggested minimum prices. There are to be found, too, instances of the refusal of the petitioner to make further shipments on orders that had been accepted until such assurance was given. Upon assurance being given, the orders were accepted, or, having been accepted, the further shipments were made. Thus, while the petitioner had the right to refuse to sell its goods to those who did not sell them at the suggested resale prices, with the further right, we think, to state to them its reasons for so doing, the evidence referred to shows that it put into practice "a system of co-operative effort," within the meaning of that part of the decision in Toledo Pipe-Threading Machine Co. v. Federal Trade Commission, 11 F.(2d) 337 (6 C. C. A.) upholding the order of the Commission in so far as it required the manufacturer to desist from requiring dealers placing orders to give assurance that they would be governed by the suggested resale prices as a condition precedent to the acceptance of the orders. It also brings this aspect of the case, in our opinion, within the principles announced in Federal Trade Commission v. Beech Nut Packing Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882. We think, therefore, that the Commission's finding that petitioner enters into understandings with and procures promises and assurances from its customers to maintain minimum prices as a condition to accepting their orders or continuing to supply them with its products is not only supported by substantial evidence, but likewise is sufficient as a matter of law to support the first section of the order. It is apparent, also, under the deci-

sions referred to, that the promises or assurances that the petitioner has required of its customers have the effect of suppressing competition and amount to unfair trade practice within the meaning of the statute.

Our approval of this first section of the Commission's order, however, is subject to certain explanatory limitations. The line of demarcation between the permissible and the prohibited, under principles already suggested, is indistinct, and rather baffles definition. Perhaps it might be said that those contracts, or those co-operative efforts, which fall within the inhibition of the law, relate primarily to the fixing of prices for goods already in the hands of jobber or retailer, rather than to a refusal by the manufacturer to make further sales to those who cut prices. In this connection we are of the opinion that the petitioner, under the Commission's order, may refuse to sell to those customers who demoralize the market and may announce as its general policy an intention so to do. If some customer cuts prices below the requested minimum, the petitioner may refuse to make additional sales to such customers, but may go no further. Assurances as to future conduct may not be solicited. Should such assurances be given by the customer, notwithstanding the lack of solicitation, they must be considered as gratuitous and as not involving the petitioner in a violation of the Commission's order. They would then amount to no more than persuasion on the part of the customer that the petitioner resume its former relations.

The second part of the order complained of directs the petitioner to cease and desist from requesting its dealers to report the names of other dealers who do not maintain petitioner's resale prices or who are suspected of not maintaining them. The Commission found as a fact that petitioner had requested its dealers to report the names of other dealers who did not maintain its resale prices. The only evidence that we find in the record touching that question is contained in a letter which the petitioner wrote to one of its customers in reply to a letter from the customer complaining of the cutting of prices by a competitor. In this letter petitioner thanked the customer for calling its attention to the price-cutting, stating that it had refused and would continue to refuse to fill the orders of dealers who persisted in cutting

prices, and, further, that it would assist petitioner if dealers who did not cut prices would call its attention to competitors who did. No general request of this kind was sent to dealers, and the only other evidence with respect to any practice on the part of the petitioner by which it sought to obtain from its dealers the names of other dealers who cut prices consists of responses to letters of complaint in which the petitioner merely expressed to the dealer his thanks for information unsolicitedly given. None of these letters, including the one first mentioned, can be said to amount to a request that the dealer report to the petitioner the names of other dealers who did not maintain the suggested prices. Contrarily the evidence shows, we think conclusively, that petitioner never made such request of any dealer. We need not determine whether, if it had done so, its conduct would be subject to condemnation by the Commission under the rulings in United States v. Colgate & Co., 250 U. S. 300, 39 S. Ct. 465, 63 L. Ed. 992, 7 A. L. R. 443, and Federal Trade Commission v. Beech Nut Co., supra. It is sufficient for the decision of this case that the finding by the Commission that it did is lacking in evidentiary support.

The third portion of the order directed the petitioner to desist from "seeking by any methods and co-operation of dealers in making effective any policy adopted by respondent for the maintenance of prices." This part of the order is too incomplete to be intelligible. If it may be construed as meaning to desist from seeking by any methods of co-operation of dealers to make effective any policy adopted by respondent for the maintenance of prices, it is wholly unjustified under the evidence save as to the practice which is forbidden by the first section of the order. It would be broad enough under the changed phraseology to cover the procuring of dealers to give assurance of the maintenance of suggested resale prices, but that practice is expressly taken care of by section 1 of the order, and it is not to be supposed that the Commission issued section 3 to cover a practice that it had already forbidden by another provision. As there was no other unlawful practice indulged in by the petitioner, we think section 3 should also be set aside.

It results that section 1 of the order is affirmed, and sections 2 and 3 are set aside.