### EDUCATORS ASS'N, Inc., et al. v. FEDERAL TRADE COMMISSION.

### No. 97.

Circuit Court of Appeals, Second Circuit.

Dec. 18, 1939.

Rehearing Denied Feb. 27, 1940.

See 110 F.2d 72.

Townsend, Kindleberger & Campbell, of New York City (E. Crosby Kindleberger, of New York City, of counsel), for petitioners.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and William L. Pencke and James W. Nichol, Sp. Attys., all of Washington, D. C., for respondent.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The Federal Trade Commission issued a complaint against the petitioners and, after hearings thereon, made an order requiring them to cease and desist from the use of certain sales practices which were found to amount to unfair methods. of competition in interstate commerce in violation of section 5 of the Federal Trade Commission Act. 38 Stat. 717, 15 U.S. C.A. § 45. This petition was brought to review that order.

During the proceedings certain facts were stipulated and, from those facts supplemented by evidence taken as to others, it was shown that Educators Association, Inc., is a New York corporation with its principal office in the City of New York which publishes a reference book suitable for use by school children which is called The Volume Library. This book is sold in interstate commerce in many of the states in competition with others selling similar books.

Educators Association, Inc., sells its entire output of The Volume Library to petitioner Leo F. Tully who is its president and owns 95% of its stock. He does business under the trade name Educators Association and maintains offices at the address of Educators Association, Inc. He either sells the books outright to the other petitioners who in turn sell them to the public or has them sold to the public by the other petitioners acting as sales agents. In either event, the sales are ostensibly made to the public by Educators Association. In connection with each sale of a book the purchaser is given a certificate of membership in Educators Association, which in fact is only a trade name, that bears a facsimile of the corporate seal of Educators Association Inc., and the signatures of L. L. Tully, President; E. E. Richards, Vice-President; and M. L. Kelley, Secretary. It states in part that " * * * the person to whom this certificate is addressed and immediate family are members of Educators Association. Said membership becomes effective when 'The Volume Library' is fully paid for, and gives full privileges for ten years of consulting our Bureau of Research and Service regarding any practical question whose answer does not appear in 'The Volume Library'." This service is given without cost provided a self-addressed stamped envelope was enclosed with the inquiry. It is mainly done by having a clerk answer the questions received though some are referred to others and Mr. Tully has an arrangement whereby forty questions a year may be referred to Encyclopedia Britannica for answer.

Sales people, employed on a commission basis with certain guarantees, are instructed in the methods of selling to be used and if they follow instructions, which include learning several pages of a composition called a sales talk, are entitled to the refund of a deposit, after working a designated time, which they are required to make to obtain a sample book and supplies. In making sales, they are expected to call at the homes of people having children in school and enlist their interest in the book by showing how it can be used by the children in their studies. Formerly, some parts of this sales talk may have indicated to parents that the sales agents were connected in some way with the school their children attended or that use of The Volume Library was a school requirement but that method of selling had been stopped before the complaint in these proceedings was issued. There was also evidence to show that sales people had been induced to sign contracts of employment without being fully advised as to the conditions of those contracts but that practice, too, had been discontinued before the issuance of the complaint.

Originally, people who did qualify as educators had had an association which compiled the matter that first was published but had been superseded by the corporate publisher and the contributors, many of them well-known educators, were not associated together at any time after petitioner Tully began to do business under the trade name Educators Association. The order under review provided that petitioners should cease and desist:

"(1) From representing through the use of the term 'Educators Association' in any corporate or trade name or through any other means or device, that they or any of them, constitute a group of educators or teachers formed into an association or that the business operated by them, or any of them, is anything other than a private business enterprise for profit.

"(2) Representing to prospective representatives that they will refund deposits or pay any specific sums of money or salaries to such representatives until and unless they fully and adequately disclose all of the terms and conditions upon which refunds or payments are actually made.

"(3) From representing or implying that they or their representatives, agents or canvassers are connected in any manner with public schools or other educational institutions, or that said Volume Library, or any other and similar publication is prescribed as a text book or required to be used in connection with school work."

The nature of the business in which the petitioners are engaged clearly makes the Federal Trade Commission Act

.applicable and if the findings are supported by substantial evidence they are conclusive. Federal Trade Comm. v. Winstead Co., 258 U.S. 483, 491, 42 S.Ct. 384, 66 L.Ed. 729; Federal Trade Comm. v. Curtis Co., 260 U.S. 568, 580, 43 S.Ct. 210, 67 L.Ed. 408; Federal Trade Comm. v. Standard Education Society, 302 U.S. 112, 117, 58 S.Ct. 113, 82 L.Ed. 141; Fioret Sales Co. v. Federal Trade Comm., 2 Cir., 100 F.2d 358.

Having found upon substantial evidence that Educators Association, Inc., and Educators Association were both business enterprises organized and existing solely to make profits from the sale of the book and that they did not comprise a group of teachers or educators properly so-called, the Commission found further that the corporate and trade names used did mislead a substantial portion of prospective purchasers into the erroneous belief that a group of teachers and educators were united to sell the book "for a common purpose other than financial gain and have the capacity and tendency to induce members of the public under such false and erroneous belief to make purchases of said volume which they would not make except for such erroneous and false belief". The part of the finding above quoted was, we think, sufficiently supported by the evidence. The selling procedure in connection with the use of those names was designed to give the impression that the paramount purpose to be achieved by the seller was not profit to be gained in business but instead the attainment by a group of learned people of their purpose to serve the cause of education. The natural tendency of such an erroneous concept would be to induce parents to buy the book when they would not have done so had they known the truth. The purchasing public is entitled to be protected against that kind of deception and a proper order to that end is in the public interest. Federal Trade Comm. v. Royal Milling Co., 288 U.S. 212, 217, 53 S.Ct. 335, 77 L.Ed. 706.

Of course the interest of the public must be specific and substantial. Federal Trade Comm. v. Raladam Co., 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191. In this instance that interest is in not being deceived by the use of the corporate and trade names in connection with attempts to sell the book. The use of those names in a manner which did not mislead the purchasing public would not be unfair and certainly would not be unfair competition. Perhaps paragraph (1) of the order was not intended to prevent the use of either of those names. But we have the power to modify such orders, Federal Trade Comm. v. Balme, 2 Cir., 23 F.2d 615, 618, and for the sake of clarity that part of the order should be modified to provide that the names may be used if coupled with other words which do away with their tendency to create a false impression by revealing the true character of the business conducted. Federal Trade Comm. v. Army & Navy Trading Co., 66 App.D.C. 394, 88 F.2d 776.

The other two paragraphs of the order are based upon adequate findings which are supported by the evidence. Both findings and evidence, however, are to the effect that the petitioners had ceased to violate Sec. 5 of the Act in the respects forbidden before the complaint was filed. Because of this, it is argued that paragraphs two and three of the order should be set aside. We do not understand that discontinuance of practices violative of the Act will alone deprive the Commission of power to make an order otherwise justified. The Act in express terms requires the Commission to issue a complaint if it shall appear to it that such a proceeding would be to the interest of the public whenever "* * * any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in commerce, * * *". 15 U.S.C.A. § 45 (b). Past as well as present practices give the Commission cause for action and their discontinuance is no defense. Federal Trade Comm. v. A. McLean & Son, 7 Cir., 84 F.2d 910, 913; Federal Trade Comm. v. Wallace, 8 Cir., 75 F.2d 733, 738.

Order modified as above and, as modified, affirmed.