**AMERICAN CHAIN & CABLE CO., Inc., et al. v. FEDERAL TRADE COMMISSION.**

No. 5062.

Circuit Court of Appeals, Fourth Circuit.

Jan. 1, 1944.

Sumner S. Kittelle, of Washington, D. C. (Feldman, Kittelle, Campbell & Ewing,

of Washington, D. C., on the brief), for petitioners.

Walter B. Wooden, Asst. Chief Counsel, Federal Trade Commission, of Washington, D. C. (W. T. Kelley, Chief Counsel, Federal Trade Commission, of Washington, D. C., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The petition of the American Chain & Cable Company, Inc., and other manufacturers of wire rope seeks to review a modified order of the Federal Trade Commission passed on May 25, 1943, whereby it was directed that the petitioners, who were then respondents to a complaint issued by the Commission, "do forthwith cease and desist from continuing, entering into, or carrying out any agreement, understanding, combination or conspiracy, *and from continuing or co-operating in any agreed or planned common course of action,* between or among any two or more of said respondents, or between any one or more of said respondents and any person, association or corporation not a party to this order, to do or perform any of the following acts or things:" (Italics supplied). The acts prohibited by the order include fixing the prices or conditions of sale of wire rope to dealers, distributors and users thereof, establishing and maintaining territorial delivered price zones, and making sales upon a delivered price basis under a zone system whereby the cost to all customers of any particular class is made identical to all destinations within a particular zone.

The Commission found that the petitioners control the production and sale of 85 per cent of the wire rope produced in the United States. They are members of the Wire Rope & Strand Manufacturers Association which was organized under a Code of Fair Competition pursuant to the National Industrial Recovery Act of 1933, 48 Stat. 195. Under the Code, list prices, discounts and classifications became uniform amongst the petitioners and a system of delivered prices was adopted on the basis of zones into which the country was divided. After the National Industrial Recovery Act was declared unconstitutional by the Supreme Court the petitioners agreed amongst themselves to co-operate in maintaining the standards set out in the

Code. The Commission concluded that these practices unreasonably restrained trade and constituted unfair competition to the prejudice of the public and of competitors in violation of § 5 of the Federal Trade Commission Act, 52 Stat. 111, 15 U.S.C.A. § 45. The findings and conclusions of the Commission are not disputed; and the order of the Commission was designed to put an end to the illegal practices in which the petitioners were engaged.

The petitioners challenge only the terms of the Commission's order, particularly the words italicized in the foregoing quotation. The original order, which was passed on December 4, 1942, differed in that the preamble directed that the manufacturers "do forthwith cease and desist from entering into, continuing, co-operating in, or carrying out *any common course of action,* agreement, understanding, combination, or conspiracy between or among any two or more of said respondents, or between any one or more of said respondents and others not parties hereto, to do or perform any of the following acts or things:" (Italics supplied).

The order was recast in its present form after the court pointed out in Salt Producers' Ass'n v. Federal Trade Commission, 7 Cir., 134 F.2d 354, 356, that the phrase "common course of action" may be used to denote either a course of action which is adopted independently and coincidentally by two or more persons as the natural result of competition, or a course of conduct adopted pursuant to an agreement or conspiracy. To correct this ambiguity the court directed that the word "planned" be inserted before the phrase "common course of action" so as to make clear that only co-operative or concerted action was intended to be condemned. After this decision the Commission amended its order in the instant case and inserted the words "agreed or planned" before the phrase whose meaning had been found to be uncertain.

Notwithstanding this modification the petitioners fear that violation of the provisions of the order may be charged if, in the future, two or more of them, acting independently and without concert, offer the same prices to customers or engage in the same trade practices; or if one or more of them, acting independently and without concert to meet competition, offer to the trade the same terms which their competitors offer pursuant to a course of action which the latter have agreed to maintain. It is said that under the order as now phrased any course of action taken in concert in the past will be forever banned in the future, no matter how distant, even if it is adopted independently by two or more of the petitioners in order to meet competition, and that the mere continuance by any petitioner of his previous prices and practices will subject him to condemnation if they are also employed by any other petitioner or by two or more individuals other than the petitioners in the same line of business These dangers, it is said, are greatly increased under business conditions prevailing in the present war emergency, particularly the critical scarcity of metal products which exists and the price ceilings which have been imposed by the Office of Price Administration, which tend to produce uniformity of price at the highest lawful level entirely irrespective of agreement or understanding between competitors in the trade.

Consequently the petitioners suggested to the Commission, without success, that the order be further clarified by inserting a declaration that nothing therein is intended to prohibit any manufacturer from independently continuing to engage in any course of action. The Commission on its part takes the position that the order in its present form lawfully effectuates the purpose of the statute and is free from ambiguity, while the additional modification proposed might seem to justify a manufacturer in continuing a course of conduct in violation of the law.

It does not seem to us that the order needs further clarification. It is of course true that a cease and desist order must be certain and unambiguous in its prohibitive terms because business men must operate under it at their peril. Salt Producers Ass'n v. Federal Trade Commission, 7 Cir., 134 F.2d 354; National Labor Rel. Bd. v. Express Publishing Co., 312 U.S. 426, 433, 61 S.Ct. 693, 85 L.Ed. 930; Cream of Wheat Co. v. Federal Trade Commission, 8 Cir., 14 F.2d 40, 50; Educators Ass'n v. Federal Trade Commission, 2 Cir., 108 F.2d 470-473; Shakespeare Co. v. Federal Trade Commission, 6 Cir., 50 F.2d 758, 760; Dr. W. B. Caldwell v. Federal Trade Commission, 7 Cir., 111 F.2d 889, 891. But, there can be no

doubt that to sustain a charge of violation of the order in this case it must be shown that the prohibited acts have been performed as the result of an agreement or conspiracy, or as the result of a common course of action, that has been agreed upon or planned between two or more persons. If, as the result of such agreement or plan, the petitioners continue to co-operate in a common course of action which has been found to violate the statute, they make themselves liable to the prescribed penalties; and they have no just cause for complaint if in appraising the evidence in any case the triers of fact seek to determine whether there is any relation or connection between their past illegal acts and the conduct under examination. If such a relation or connection is found it may properly be condemned as a continuance of an unlawful conspiracy. Of course the influence of changed business conditions must be taken into account in reaching a decision; but there is no reason to believe that the Federal Trade Commission will fail in its duty in this respect or that the courts will hesitate to modify or reverse an order that is based on inferences not supported by the evidence.

Affirmed.