**GELB et al. v. FEDERAL TRADE COMMISSION.**

**No. 144.**

Circuit Court of Appeals, Second Circuit.

Aug. 14, 1944.

1941, which dismissed the complaint as against the corporation because of its dissolution in November 1940, and directed the individuals to cease and desist from making certain representations in advertising Clairol products. In due time they filed their petition in this court to review the order, but filing of the transcript of record was delayed nearly two years and the case was not brought on for argument until May 1944.

The petitioners' first contention is that no cease and desist order should have been issued against them, since they personally did no advertising of Clairol products and the proceeding was dismissed against the corporation whose advertising was challenged. This contention is without merit. The petitioners had dominant control of the business activities of the New York corporation named in the complaint and have continued similar control over a Connecticut corporation, Clairol, Incorporated, which succeeded to its name and assets. The commission was justified in concluding that it was necessary to enjoin the individuals in order to prevent the unfair competitive practices which it found to exist. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 119, 120, 58 S.Ct. 113, 82 L.Ed. 141. Nor can the petitioners prevail in their argument that the injunction may not include forms of advertising which have been discontinued. See Federal Trade Comm. v. Goodyear Tire & Rubber Co., 304 U.S. 257, 260, 58 S.Ct. 863, 82 L.Ed. 1326; Educators Ass'n v. Federal Trade Comm., 2 Cir., 108 F.2d 470, 473.

Complaint is made of the trial examiner's refusal to strike the testimony of Dr. Snell because after admitting that he was looking to some one besides the commission for compensation, he declined to obey the examiner's direction that he answer the question "To whom?" Dr. Snell was first called as an expert witness by the commission, and was subject to full cross-examination; later he was recalled as a witness for the respondents. It was on the latter appearance and during direct examination that he refused to answer the question propounded. Had counsel desired to compel the testimony, the means provided by the statute were available, 15 U.S.C.A. § 49. The incident bore merely on the credibility of the recalcitrant witness; it did not require that all his testimony be stricken from the record.

Wilbur H. Friedman, of New York City (Joseph M. Proskauer, of New York City, John Wattawa, of Washington, D. C., and Eugene Eisenmann, of New York City, of counsel), for petitioners.

W. T. Kelley, Chief Counsel, Joseph J. Smith, Jr., Asst. Chief Counsel, and Earl J. Kolb, Sp. Atty., all of Washington, D. C., for respondent.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

In September 1938 the Federal Trade Commission issued a complaint against Clairol, Inc., a New York corporation, and three individuals who were its officers and controlled its advertising policies and practices. The complaint charged violation of the Federal Trade Commission Act, 15 U.S.C.A. § 45, in advertising two cosmetic preparations for shampooing and coloring the hair known generally as "Clairol" and specifically as "Progressive Clairol" and "Instant Clairol". The proceedings resulted in the commission's order of October 8,

582

The only substantial question presented by the case is whether there is evidence to support the findings upon which rest clauses 2, 3 and 7 of the order enjoining the petitioners from

"(2) Representing that said preparations recondition the hair, or restore the natural or youthful color of the hair.

"(3) Representing that the effect produced upon the color of the hair by the use of said preparations is permanent.

"(7) Representing that said preparation Instant Clairol is harmless or safe for use."

■ We are not unmindful of the statutory admonition that the commission's findings as to the facts, "if supported by evidence, shall be conclusive." 15 U.S.C.A. § 45(c); Federal Trade Comm. v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141. But this provision must be interpreted as requiring substantial evidence as the basis of findings in order to render them conclusive. J. B. Lippincott Co. v. Federal Trade Commission, 3 Cir., 137 F.2d 490, 491 and authorities there cited. The petitioners contend that the findings essential to sustain clauses 2, 3 and 7 are not supported by substantial evidence.

■ As to clause 2 the petitioners' attack goes only to the prohibition against representing that Clairol preparations "recondition the hair". The commission found that the preparations are incapable of reconditioning the hair. It made no finding as to the meaning of the term "recondition." Dr. Snell, whom the commission produced as an expert in chemistry, testified that "as the term is used in the trade, it is intended to mean the application of an oil to the hair, usually hair which has been recently shampooed and which has a dry effect." He had previously testified to having made an analysis of Clairol, which he found to contain dye, soap and a "trace" of oil. Because soap would tend to remove natural oils from the hair, he was of opinion that Clairol could not "recondition" the hair as he had defined the term, and that it contained nothing to make the hair glossy. However his own analysis (Commission's exhibits A-D) shows that what he designated as soap was potassium oleate, 7.56%, and ammonium oleate, 12.23%. Another chemist, Mr. Barban, testified without contradiction that ammonium oleate, when diluted and warmed as in shampooing, liberates ammonia gas and leaves a fatty deposit of oleic acid as free oil, which will impart luster and softness to the hair. Not a single witness who testified from experience in using the preparation denied that Clairol did in fact leave the hair glossy —"reconditioned" within Dr. Snell's definition. Many witnesses on both sides affirmatively stated from experience that it did. Dr. Snell's inference to the contrary, based solely on his chemical analysis, without experience in the use of the preparation, and with no contradiction of Mr. Barban's testimony that in use the ammonium oleate deposits a substantial percentage of free oil, oleic acid, cannot, in our opinion, be regarded as substantial evidence that Clairol is incapable of reconditioning the hair.

■ Clause 3 of the order forbids the petitioners to advertise that Clairol colors the hair permanently. There is no dispute that it imparts a permanent coloration to the hair to which it is applied, but the commission found that it has "no effect upon new hair," and hence concluded that the representation as to permanence was misleading. It seems scarcely possible that any user of the preparation could be so credulous as to suppose that hair not yet grown out would be colored by an application of the preparation to the head. But the commission has construed the advertisement as so representing it, and so construed it is false. One witness was found who by dint of much prodding was finally induced to testify "that you would think 'permanent' means you would never need to bother having it dyed again;" although she herself knew better. Since the Act is for the protection of the trusting as well as the suspicious, as stated in Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141, we think the order must be sustained on this point. The restraint which the prohibition in question puts upon the petitioners can be of little practical importance; it does not preclude them from advertising that Clairol colors permanently the hair to which it is applied.

■ Clause 7 of the order forbids representing that Instant Clairol is harmless or safe for use. This rests upon a finding that it is not so in all cases since it contains a coal tar derivative, paratolylene diamine, and where the user is allergic to such drug, the use of the preparation will result in irritation or rash; and if used for dyeing the eyelashes or eyebrows, blindness may result. That this finding is cor-

rect is proved by the cautionary notice printed on each package of Instant Clairol. The petitioners argue that since the preparation is never recommended for use, nor ever used, on the eyelashes or eyebrows, and is perfectly harmless to the normal person, and even the rare allergic person cannot be injured if he follows the instructions printed on the package, the advertisement is true. They rely also on the 1938 amendment to the Act, 15 U.S.C.A. § 55(a) which directs that in determining whether any advertisement is misleading, consideration must be given to the use of the article "under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." But we do not think that this amendment precludes the commission from requiring that the warning carried by the package must be suggested by the advertisement itself. Members of the general public who see the advertisement and may thereby be induced to ask a beauty parlor operator to use Instant Clairol on their hair, may never see the warning printed on the package. Hence clause (7) is supportable. But its prohibition would not be infringed by an advertisement representing that Instant Clairol is harmless and safe if used in accordance with instructions contained in the package.

Clause (2) of the order is modified by omitting the words "recondition the hair or"; as so modified the order is affirmed.

CLARK, Circuit Judge (dissenting in part).

I think the Commission's entire order was in its power; indeed, I go further and believe the Commission has the bounden duty to take comparatively stern measures against this type of particularly crude, if not cruel, appeal to human vanities, both for the benefit of honest competitors (of whom at least several have already stipulated to forego such advertising) and, now since the extension of the Commission's powers in 1938, for the direct protection of the consuming public. We held as much recently in dealing with "Rejuvenescence Cream" in Charles of the Ritz Distributors Corp. v. Federal Trade Comm., 2 Cir., 143 F.2d 676, a case to my mind quite on all fours with this one. Here there was ample expert evidence, if, indeed, it was needed

beyond the teachings of common sense, that a shampoo "tint" (the word petitioners find somehow preferable to "dye") could not restore "youthful color"—or, as they now say, in a palpable attempt to dissimulate, the "most youthlike color." It is against this background that the claim "of reconditioning" of the hair and of "permanent" revivifying obviously must be read. Reading these blurbs together, with their natural and clearly intended significance, it seems to me improper to hold the Commission compelled as a matter of law to find a mere oil shampoo to be a reconditioning of the hair in any real sense. Of course, it is hardly claimed that the hair is really made "youthful" or "youthlike"; petitioners' actual defense is that no one should be fooled —a defense repudiated every time it has been offered on appellate review, so far as I know, since it is well settled that the Commission does not act for the sophisticated alone. See extensive citations in Charles of the Ritz Distributors Corp. v. Federal Trade Comm., supra; Federal Trade Comm. v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L. Ed. 141; Sebrone Co. v. Federal Trade Comm., 7 Cir., 135 F.2d 676, 679. How much of a change in the advertising employed will be required in practice under our decree is far from clear, since it is coupled with an interpretation, technically accurate, but practically artificial, of "permanent." I fear the emasculation of the Commission's order goes so far that in all probability no consumer will notice any difference. Moreover, ambiguity lurks in permission to advertise a product as "harmless" if used in accordance with instructions contained in the package, while the label on the bottle warns (as legally it must under the Federal Food, Drug, and Cosmetic Act as amended in 1938, 21 U.S.C.A. § 361(a)) that it is harmful to certain persons or under certain conditions. Hence, even if we had control over the Commission's choice of remedy, I should think it quite a mistake to exercise it here. But we have protested most strongly and steadily recently that we have no such control. Herzfeld v. Federal Trade Comm., 2 Cir., 140 F.2d 207; Parke, Austin & Lipscomb v. Federal Trade Comm., 2 Cir., 142 F.2d 437; Charles of the Ritz Distributors Corp. v. Federal Trade Comm., supra.